# CHESHIRE,

## JULY TERM, A. D. 1847.

### WETHERBEE *v.* MARSH.

In an action for slander, the defendant may prove, in mitigation of damages, that when the words were uttered a general report existed that the plaintiff had committed the act charged.

CASE FOR SLANDER. The declaration contained several counts, in some of which the plaintiff sets forth words

uttered by the defendant, charging the plaintiff with burning his own barns, they being insured at the time, and in other words charging him with burning the barns of the defendant. Plea, the general issue, with a brief statement that the defendant would offer evidence, and prove that the words alleged and proved to have been spoken by him were true.

Upon the trial, the defendant having offered evidence for the purpose of showing the truth of the words spoken by him, offered further to prove, in mitigation of damages, that there was a general report, immediately after the plaintiff's buildings were burned, that the plaintiff set them on fire himself. The plaintiff objected to the admission of this evidence, but the court overruled the objection.

Upon the admission of this evidence, it appeared that there was a general opinion of that character expressed in the neighborhood the next morning after the fire, and about the same time that the defendant uttered the words for which this action was brought; and that the defendant then, in order to show that those reports did not originate in what he had said, offered evidence that particular individuals made the same charge against the plaintiff on the night of the fire, and before the time when the defendant spoke the words in question. The plaintiff objected to the admission of this evidence, but the court admitted it in mitigation, on the ground that it had some tendency to show that all the injury which might have resulted to the plaintiff's character from the circulation of such a charge did not arise from the words spoken by the defendant.

The defendant further offered evidence in mitigation of the damages, not only that the plaintiff's general character was bad, but that his general reputation was that of an incendiary before these buildings were burnt; to which the plaintiff objected, but the court admitted the evidence.

The jury found a verdict for the defendant upon the counts founded upon the words charging the plaintiff with

having set fire to his own buildings, and for the plaintiff upon the other counts; and the plaintiff moved for a new trial.

*Foster,* for the plaintiff.

*Handerson,* for the defendant.

GILCHRIST, J.    In an action on the case for slander, the plaintiff seeks to recover damages for the wrong inflicted upon his character by the defendant's words.    It is customary, in declarations for slander, to allege the general good character of the plaintiff, but this allegation is not traversable.

It is, however, well settled that the defendant may, in mitigation of damages, show that the plaintiff's character was previously bad, because, (*Lamos* v. *Snell,* 6 N. H. 413,) " a person of disparaged fame is not entitled to the same measure of damages for any particular charge calculated to affect reputation, as a person whose character was previously unblemished; and because a character of the first description is not susceptible of the same degree of injury as the other, or may perhaps be so bad as to be incapable of receiving injury."

And the evidence may tend, either to establish that the plaintiff's character is generally bad, or that he has a bad reputation with reference to the kind of vice imputed in the alleged slander.    This was in substance remarked in the case cited, and the remark appears to be sustained by the authorities referred to.

In *Knobell* v. *Fuller,* Stark. on Slander, cited also in Peake's Ev., Ap. xcii., *Eyre,* C. J., said that he had always understood that in actions for words, the defendant might, in mitigation of damages, give any evidence short of such as would be a complete defence to the action, had a justification been pleaded; and he admitted evidence to show the existence of strong grounds of suspicion against the

plaintiff. The libel charged him with having procured money from the friends of persons convicted of capital offences, under pretence of being able to procure their pardon.

In *Newsam* v. *Carr*, 2 Stark. 69, Mr. Baron *Wood* said that in actions for slander, evidence that the plaintiff was a person of suspicious character, was admissible in mitigation of damages. This was in 1817. General reports have been admitted in mitigation of damages. *Mills* v. *Spencer*, Holt 533.

In *Williams* v. *Callender*, cited in a note to *Wyatt* v. *Gove*, Holt 299, Lord *Ellenborough* said that the defendant might give in evidence somewhat of the real character of the plaintiff, to show that it was not unblemished.

In —— v. *Moore*, 1 M. & S. 284, reports that the plaintiff had been guilty of practices similar to those charged, was admitted, to contradict the plaintiff's allegation that he was of good fame, and in mitigation of damages. This was upon the authority of *Earl of Leicester* v. *Walter*, 2 Camp. 251, reported also in Stark. 408. The point there decided was nearly the same involved in the present case, and the reasoning of the chief justice appears to conclude the question. It was an action for a libel, which stated that the plaintiff had been charged by his lady with the same offence for which Lord Audley had been executed in the reign of Charles I.

The defendant's counsel, at the trial upon the general issue, offered, in mitigation of damages, to prove that before and at the time of the publication of the libel it was generally rumored that such a charge had been brought against the plaintiff; that there was a general suspicion of his character and habits, and that his relations and former acquaintances had, in consequence, ceased to visit him.

Sir *James Mansfield*, chief justice, said that "as it seems to have been decided in several cases that if you do not justify, you may give in evidence anything to mitigate the

Wetherbee *v.* Marsh.

damages, though not to prove the crime which is charged in the libel, I do not know how to reject these witnesses. Besides, the plaintiff's declaration says that he had always preserved a good character in society, from which he had been driven by the insinuations in the libel. Now the question for the jury is, whether the plaintiff actually suffered this *gravamen* or not. Evidence to prove that his character was in as bad a situation before as after the libel, must, therefore, be admitted."

The judge instructed the jury accordingly, and among other things said, that "it did not matter whether the reports were well or ill founded, provided they got into many men's mouths." This case seems to have been followed by the English decisions. —— v. *Moore*, 1 M. & S. 284; *East* v. *Chapman*, 2 C. & P. 570; Stevens N. P. 2578.

The principle, however, has not been acknowledged in its full extent by the decisions in this country, and its application has in various cases been denied; *Matsen* v. *Buck*, 5 Cow. 499; *Wolcott* v. *Hall*, 6 Mass. 514; and while evidence of the plaintiff's general bad character is admitted in extenuation of the injury, evidence that he has been generally believed guilty of the offence imputed by the slander, has been rejected. The reason assigned is that the object of the prosecution is to silence such slanders; and it would be impossible to accomplish the purpose if the suit could be defeated by merely proving their existence.

But the evidence is admitted only in mitigation of damages; and if in point of fact the reputation of the plaintiff has become fixed in respect to the crime imputed by the common speech of men, before the utterance of the words complained of, it is obvious that the mischief occasioned by them is less than if they had been the first cause of the general suspicion, and had in any just sense given birth to the infamy under which the plaintiff suffers.

There is certainly a distinction between the two cases,

which ought to be recognized in favor of the party who has committed only the minor offence of charging a crime that the accused has been so generally believed guilty of, that he has suffered but little by the slander. The jury alone can appreciate that difference by determining, upon the evidence, how far the plaintiff had been sunk in infamy before the weight of the slander complained of was added, and how far the aspersions cast by the defendant have deepened the infamy, if at all.

We conclude, therefore, in the conflict of opinion which has undoubtedly existed on this question, that the better reason is with those who admit the evidence to go to the jury, to show that however unable the defendant has been to prove the truth of the words uttered, yet the calumny they contain is one under which the plaintiff so unquestionably lay before they were spoken, that less damage has resulted from them than if the reputation which they aspersed had been previously pure.

The defendant had spoken words charging the plaintiff with having burned his buildings and the buildings of others. Now, if before these words were spoken, it had been generally reported and believed that the plaintiff had committed those acts, still, if the words were untrue, they were unjustifiable. But to say that they did the plaintiff as much damage as if they had first caused the belief or suspicion of his guilt, would seem to confound a plain and recognized distinction.

How generally this belief prevailed, how firmly it was founded in the common mind, and to what extent it excused or palliated the conduct of the defendant, were questions for the jury to entertain, and were proper subjects for their consideration in assessing damages, or determining whether any had been sustained.

We think, therefore, that the evidence was properly admitted, and that there must be

*Judgment on the verdict.*