### AGNES A. KENNEY *vs.* JOHN McLAUGHLIN & wife.

A repetition of a slander already in circulation, without expressing any disbelief of it, or any purpose of inquiring as to its truth, though made without any design to extend its circulation or credit, or to cause the person to whom it is addressed to believe or suspect it to be true, is actionable.

In an action for slander, the only evidence was that the defendant repeated a slander, already in circulation, to one person, who testified that she did not believe it, or think any worse of the plaintiff for having heard it: The jury were instructed that if the defendant repeated the slander, conveying to any extent the idea that it was true, or that the defendant believed it to be true, this action would lie; but that it would be otherwise, if the defendant repeated the slander without any design to extend its circulation or credit, or to cause the person to whom it was addressed to believe or suspect it to be true: The jury returned a verdict of a trifling amount for the plaintiff. *Held*, that the plaintiff was entitled to a new trial.

ACTION OF TORT for slander by the female defendant, in a conversation with Mrs. McDermott, by charging the plaintiff with the crime of fornication. Answer, a general denial. Trial in the court of common pleas before *Hoar*, J., who signed this bill of exceptions :

" Mrs. McDermott testified for the plaintiff, that she met the female defendant in the street, who asked her, ' If she had heard the story ? ' to which she answered, ' What story ? ' Defendant replied, ' Nothing less than that Agnes is Mr. Moran's kept miss.' Witness replied, ' I do not believe it.' Defendant said, ' It is all over the glasshouse.' Witness said, ' That could not be, or her husband would have heard of it, who worked in the glasshouse.' Defendant said. ' It was not in the upper, but the

lower glasshouse.' The witness further testified that she did not believe the story, or think any worse of the plaintiff for having heard it.

" The defendants claimed that no charge of fornication had been made; and that there were such reports current in the community, which the defendant had spoken of, without in any degree sanctioning or confirming them, and offered evidence that such reports were current in the community before the conversation with Mrs. McDermott. To this evidence the plaintiff objected, but the presiding judge admitted it; and instructed the jury, that the substance of the plaintiff's action was, that the defendant had charged her with a crime; that if the defendant repeated a story defamatory of the plaintiff, conveying to any extent the idea that it was true or that she believed it to be true, it would be a slander; but that if the defendant merely said that there was a story in circulation of the kind set forth in the writ, and did not say so with any purpose or design to extend its circulation, or in any degree to cause the person whom she addressed to believe or suspect the charge which the story imputed to be true, or to add to it any sanction or authority of her own, or to give to it any farther circulation or credit, and it was true that such a story was in circulation, it would not be actionable to say so.

" The other instructions of the court were not excepted to by either party. The jury found a verdict for the plaintiff for $7.29; and the plaintiff, on account of the small amount of damages, excepts to the admission of the evidence above stated."

*T. D. Eliot*, for the plaintiff.

*G. Marston*, for the defendants. The evidence excepted to was properly admitted; because the words charged to have been spoken were susceptible of two constructions, one slanderous, the other not; namely, either that the plaintiff had been guilty of a crime, or that there was such a report. And in such a case the jury are to decide upon the intent, it being matter of fact to be collected from all the concomitant circumstances. *Welsh* v. *Eakle*, 7 J. J. Marsh. 424. *Davis* v. *Johnston*, 2 Bailey,

579. *Van Vechten* v. *Hopkins,* 5 Johns. 221. *Dexter* v. *Taber,* 12 Johns. 240. *M'Kinly* v. *Rob,* 20 Johns. 356. *Gorham* v. *Ives,* 2 Wend. 534. *Gibson* v. *Williams,* 4 Wend. 320. 1 Stark. Sland. 46, 47, 60.

The plaintiff has no ground of exception to the instructions; for the judge expressly directed the jury " that if the defendant repeated a story defamatory of the plaintiff, conveying to any extent the idea that it was true or that she believed it to be true, it would be a slander." And the jury have found that the words were spoken slanderously, which renders immaterial the definition of the judge as to what would not be actionable.

There was adequate cause for the smallness of the damages; for the declaration is for words spoken to a particular person, and that person did not believe them, or change her opinion of the plaintiff in consequence of them. The plaintiff was therefore entitled to nominal damages only.

THOMAS, J. That an action of slander lies for charging the plaintiff with the crime of fornication is well settled. *Miller* v. *Parish,* 8 Pick. 384. It is a charge of a crime punishable by law, and of a character to degrade and disgrace the plaintiff and exclude her from society. That the words uttered import the commission of the offence cannot be doubted.

The uttering of the words is a wrongful act, purposely done; and this is sufficient to constitute legal malice. To prove legal malice it is not necessary to show that the words were uttered from personal enmity or ill will. When the words are uttered, the true measure of damages is the injury caused by the utterance. The " story " uttered or repeated by the defendant contains a charge against the plaintiff of a nature to destroy her reputation. It was a false charge. It is no answer, in any forum, to say, that she only repeated the story as she heard it. If the story was false and slanderous, she must repeat it at her peril. There is safety in no other rule. Often the origin of the slander cannot be traced. If it were, possibly it might be harmless. He who gives it circulation gives it its power of mischief. It is the successive repetitions that do the work. A falsehood often repeated gets to be believed.

1 *

We think the instructions of the learned judge were not in conformity to the law, as understood in this Commonwealth. *Wolcott* v. *Hall*, 6 Mass. 514. *Alderman* v. *French*, 1 Pick. 18. *Bodwell* v. *Swan*, 3 Pick. 376. *Commonwealth* v. *Snelling*, 15 Pick. 337. *Stone* v. *Varney*, 7 Met. 91. *Watson* v. *Moore*, 2 Cush. 133. The jury were instructed, that if the defendant merely said there was a report in circulation of the kind set forth in the writ, and did not say so with any design to extend its circulation, or in any degree to cause the person whom she addressed to believe or suspect the charge which the story imputed to be true, or to add to it any sanction or authority of her own, or to give it any further circulation or credit, and it was true that such story was in circulation, it would not be actionable to say so.

It seems scarcely possible that a story could be repeated by a person of any respectability, under the circumstances and with the results supposed. To say that such a story is current, and to relate it to one before that time ignorant of its existence, necessarily gives it further circulation; and a party is presumed to know and intend the necessary consequences of his acts.

And such is the case before us. The witness had never heard of the story, and expresses her disbelief of it. The defendant, so far from expressing a concurrence in the witness's disbelief, replies, " It (the story) is all over the glasshouse." And when the witness says this could not be, or her husband, who worked at the glasshouse, would have heard it, the defendant replied, " It was not in the upper, but the lower glasshouse."

The story is related to one before ignorant of it, without giving the person from whom it was received, without expressing any disbelief of it, without any apparent purpose of inquiry as to its truth, and with the assertion, in reply to the disbelief of the witness, of the currency of the report.

It seems to us that the jury, treating the instructions as applicable to the case before them, may have been misled; that they may have understood the learned judge to mean that the simple repetition of a slanderous story, without express malice, was not actionable.

But under the limitations stated, if they were possible, we think the rule laid down is not the law. A man cannot say there is a story in circulation that A poisoned his wife, or B picked C's pocket in the omnibus, or that D has committed adultery, and relate the story, and, when called upon to answer, say, "There was such a story in circulation; I but repeated what I heard, and had no design to circulate it or confirm it;" and for two very plain reasons—that the repetition of the story must, in the nature of things, give it currency; and the repetition, without the expression of disbelief, will confirm it.

The danger is an obvious one, and long since pointed out; and it is, that bad men may give currency to slanderous reports, and then find in that currency their own protection from the just consequences of a repetition.

Although the jury, under these instructions, returned a verdict for the plaintiff, yet, from the damages returned, we cannot but believe the instructions of the learned judge, which we think incorrect, must have prejudiced the plaintiff's cause, and that justice requires she should have a new trial.

*Exceptions sustained.*