BAILEY <i>against</i> HYDE.

In an action of slander, for saying of the plaintiff, who was a deputy post-master, that *he never sent from his office a treasury note*, enclosed in a letter, which had been put into his office, by a third person, addressed to a correspondent in *New-York*, but that *he had stolen such note*, the defendant, under the general issue, offered to prove, that before the speaking of the words, the plaintiff said, that *the treasury note never left his office*, and that after the speaking of the words, the plaintiff said, that *his brother, S. B., was the author and first promulgator of the story :* Held, that this evidence was inadmissible.

In an action of slander, the defendant cannot, under the general issue, without notice, prove the truth of the words charged, in mitigation of damages.

But the defendant may, on the general issue, prove, in mitigation of damages, facts and circumstances, affording a ground of suspicion that the plaintiff was guilty of the misconduct imputed to him, shewing that before the speaking of the words complained of, the plaintiff was a person of disparaged fame, or tending to diminish the presumption of the defendant's malice, which, if pleaded, or given in evidence after notice, would not have amounted to a justification.

*October 27.*

THIS was an action of slander ; which was tried on the general issue.

The plaintiff, being post-master of the post-office in *Lebanon, Samuel Bailey*, a brother of his, put into such post-office, a letter directed to *Jonathan Little*, Esq. of *New-York*, in which was enclosed a treasury note, for 1000 dollars. This letter, with the note enclosed, the plaintiff put into the mail, and forwarded it, by the mail carrier to *New-York*, by the usual route through *Franklin, Norwich* and *New-London ;* but, having been mislaid, by accident, in the post-office at *New-*

*Windham,*
*October,*
*1820.*

*Bailey*
*v.*
*Hyde.*

*London,* it never arrived in *New-York.* During the enquiry about the treasury note, thus supposed to be lost, the defendant said of the plaintiff, "He never sent it from his office: He has got it himself;" meaning, as the declaration alleged, that the plaintiff had *stolen* it. After the plaintiff had proved the speaking of the words, by the defendant, the latter offered testimony to prove, that before the speaking of the words, the plaintiff said, that "the treasury note had never left the post-office;" and that, after the speaking of the words, the plaintiff said, that "his brother, *Samuel Bailey,* was the author and first promulgator of the story." This testimony was presented to the court and jury, without any offer to prove, that at the time the defendant uttered the words charged, he *knew* that the plaintiff had said, that the treasury note had never left the post-office: Nor was there any offer to prove, that at the time the plaintiff said, that his brother, *Samuel Bailey,* was the author and first promulgator of the story, he *knew* that the defendant had uttered the words charged. The testimony thus offered, by the defendant, being objected to, by the plaintiff, the judge rejected it; and the jury gave a verdict for the plaintiff. Whereupon, the defendant moved for a new trial, on the ground, that the decision of the judge was erroneous.

*Cleaveland,* in support of the motion, contended, 1. That the testimony offered by the defendant, to prove, that the plaintiff had himself said, that the treasury note never left the post-office, ought to have been received, as an *admission* on the part of the plaintiff, to repel malice, and to mitigate damages. For this purpose, any testimony, shewing that the defendant had reason to believe or suspect the fact charged, not amounting to a justification, is admissible. The circumstances under which the admission was made, might satisfy the jury, the defendant had knowledge of it, and was thereby induced to utter the words charged. *Morris* v. *Duane,* 1 *Binn.* 90. n. Case cited by *Coke* in *Brook* v. *Montague, Cro. Jac.* 91. *Larned* v. *Buffinton,* 3 *Mass. Rep.* 546. 553.

2. That the testimony offered by the defendant, to prove, that the plaintiff had admitted, that another person than the defendant, was the author and first promulgator of the calumny complained of, ought also to have been received, for the

purpose of mitigating damages. *Northampton's* case, 12 *Co.* 134.

*Goddard* and *D. Young,* contra, contended, 1. That nothing tending to prove the truth of the words charged, is admissible under the general issue without notice, as evidence in chief, or in mitigation of damages. *Underwood* v. *Parks,* 2 *Stra.* 1200. *Andrews* v. *Vanduzer,* 11 *Johns. Rep.* 38. *Knobell* v. *Fuller, Peake's Ev.* 287, 8. *append. xcii.*

2. That proof tending to shew, that the words charged, had been spoken by other persons, is not admissible, unless reference is made to such persons, at the time. *Mullett* v. *Hulton,* 4 *Esp. Rep.* 248. *Wolcott* v. *Hall,* 6 *Mass. Rep.* 514. No case has gone further, than to permit proof, that the report was occasioned by the plaintiff's *misconduct. Larned* v. *Buffinton,* 3 *Mass. Rep.* 553.

HOSMER, Ch. J. A letter enclosing a treasury note for transmission, was put into the office, of which the plaintiff was post-master. The defendant said, meaning to charge him with larceny, that " he had never sent the treasury note from his office, but had stolen it." At the trial, the defendant offered to prove, that *before* the words charged in the declaration were spoken, the plaintiff had said, that " the treasury note never left his office." He likewise proposed to evince, that *after* the speaking of the words, the plaintiff affirmed, that " his brother, *Samuel Bailey,* was the author, and first promulgator, of the story." It was not pretended, when the words alleged in the declaration were spoken, by the defendant, that he knew the plaintiff had said the treasury note never left his office; or that the plaintiff had knowledge, when he observed that his brother was the first promulgator of the story, that the defendant had made the declaration of which he complains. The offered testimony was rejected; and to review this decision, was the object of the present motion.

There can be no reasonable pretence, that the evidence offered by the defendant, amounted to a justification. The admission by the plaintiff, (if it ever was made,) that the treasury note never left his office, falls far short of proving a felonious taking. It would be a wanton and perverse construc-

*Windham,*
*October,*
*1820.*

*Hyde*
*v.*
*Bailey.*

tion of language, to infer larceny from an expression, which is fully satisfied, by the supposition of an innocent mistake. It is a well settled rule, that the truth of a charge is not admissible in mitigation of damages. *Underwood* v. *Parks*, 2 *Stra.* 1200. *Andrews* v. *Vanduzer*, 11 *Johns. Rep.* 38. *Kennedy* v. *Gregory*, 1 *Binn.* 85. *Shepard* v. *Merrill*, 13 *Johns. Rep.* 475. *Van Ankin* v. *Westfall*, 14 *Johns. Rep.* 233. It is equally indisputable, that evidence which falls short of a justification, may be competent to mitigate damages ; and that the defendant, on the general issue, may prove, in mitigation of damages, such facts and circumstances as shew a ground of suspicion, not amounting to actual proof of the guilt of the plaintiff. *Knobell* v. *Fuller*, *Peake's Evid.* 287, 8. *append. xcii.* So, if any facts exist, which tend to diminish the presumption of malice, they are competent proof. *Morris* v. *Duane*, 1 *Binn.* 90. n. Or, if the fame of a person is disparaged, by there having been reports in the neighbourhood, that he had been guilty of practices similar to those imputed to him, it is admissible to shew this in evidence. ——— v. *Moor*, 1 *Mau. & Selw.* 285.

But these various principles are in no respect available to the defendant's benefit.

In the first place, the mere admission that the treasury note had never left the plaintiff's office, is, of itself, insufficient to generate even a suspicion, that he had feloniously taken it. For, although the facts proved, need not establish the truth of the defendant's charge, they certainly must amount to something more than vague conjecture, and must at least establish such probability as would influence the opinion of a man of sound mind.

The malice of the defendant would not, in the least, be diminished, by the facts, which he offered to prove, because they were *unknown* to him, at the time of the slander complained of.

And in respect of the plaintiff's assertion, that his brother was the first promulgator of the scandalous story, this, unaccompanied by any other fact or circumstance, could have had no possible effect on the damages. If there had been a circulation of the slander to an extent so considerable as to have blemished the plaintiff's character, *before* the defendant commenced the propagation of the scandalous imputations alleged, I should be of opinion that proof of this fact would

be admissible. But nothing of this kind, appears on the defendant's motion. A declaration made by the plaintiff, that his brother had calumniated him, by having used the same expression as the defendant did, would be of no imaginable importance in the estimate of damages, unless there had been offered in evidence other facts and circumstances, from which it might be reasonably inferred, that this calumny had injured the plaintiff's reputation.

*Windham,*
*October,*
*1820.*

Hyde
*v.*
Bailey.

The defendant must render it reasonably apparent, that justice has not been done him, and to such an extent, that in the exercise of a sound discretion, it is fit there should be a new trial. This, in my judgment, he has not done; and, therefore, his motion must be denied.

The other Judges were of the same opinion.

New trial not to be granted.